SEPTEMBER 28, 2017
TO BE PUBLISHED

# Supreme Court of Kentucky

2017-SC-000142-KB

FINAL

DATE 10/10/17 Kim Redmon, DC

KENTUCKY BAR ASSOCIATION                                        MOVANT


V.                            IN SUPREME COURT


JAMES GRANT KING                                        RESPONDENT


AND
2017-SC-000245


JAMES GRANT KING                                        MOVANT


V.                            IN SUPREME COURT


KENTUCKY BAR ASSOCIATION                                        RESPONDENT


## OPINION AND ORDER

Movant, James Grant King, Kentucky Bar Association (KBA) Number 88465,[1] admits to violating the Kentucky Rules of Professional Conduct and

---

[1] King was admitted to the practice of law in Kentucky on October 23, 2000, and his bar roster address is 115 Noah Cove, Suite A, Paducah, Kentucky 42003.

moves this Court to impose the sanction of permanent disbarment. The KBA has no objection to King's motion.

## I. BACKGROUND

The misconduct leading up to King's motion to resign under terms of permanent disbarment spans six KBA files and occurred over the course of more than a decade. Only one of the files has progressed to the point of the KBA issuing charges, however, King acknowledges that sufficient facts exist in the remaining files to justify the issuance of charges. In order to terminate all KBA proceedings, he seeks to resign under terms of permanent disbarment.

The facts contained in the KBA files are disconcerting to say the least. On separate occasions, King used various clients' funds for his personal use. To do so, King used an assortment of tactics. He lied about settlement agreements, failed to reimburse entities with subrogation interests, wrote cold checks, and falsified information. King has since been indicted on three felony charges related to fraud he perpetrated after defaulting on a loan.

### A. KBA File 16-DIS-0012

King represented Duane Isbell in a personal injury action in 2006. An agreed order was entered in 2007 stating Isbell would receive $75,000, but would be required to reimburse Medicare for his medical bills. King placed $20,000 of the settlement in escrow, purportedly to pay Medicare following negotiations of the total bill. King collected his fee out of the remaining $55,000, then distributed the balance to Isbell. King negotiated a reimbursement total of almost $14,000 with Medicare in 2008 and sent Isbell a

2

letter in 2009 indicating he paid Medicare. In 2010, King gave Isbell a check for around $6,000, which should have been the balance remaining in the escrow account after paying Medicare. Isbell grew concerned when years passed without him receiving a release from Medicare. In 2013, King sent Isbell a letter and a second check purportedly to Medicare from a separate escrow account. However, that account had been drained of funds.

In 2016, Medicare told Isbell it had never received a check from King and that interest had accrued over the years. Isbell's balance at that time was more than $25,000. Isbell and Medicare both requested a copy of the cancelled check from King, but King responded to neither party.

The Inquiry Commission charged King with violating SCR 3.130-1.3 for failing to pay Medicare on Isbell's behalf, -1.15(a) for comingling funds, and -8.4(c) for deceiving Isbell with a check written to Medicare from an account he knew had a zero balance and dishonestly misappropriating the funds he should have used to pay Medicare.

### B. KBA File 16-DIS-0393

Bruce Jett, King's neighbor, loaned King $97,500. Under the terms of the promissory note, King was to pay interest of 3.5% per annum and pay the loan off in full within a year. King also signed the title of a bass boat over to Jett as collateral. After King failed to make any payments on the loan, Jett attempted to transfer the title to the boat into his name as partial payment for the debt. However, King had fraudulently applied for a lost title and used the copy to sell the boat to another individual. King apparently used the funds to

3

purchase another boat. King gave the new boat to Jett as partial repayment, but Jett had to pay a balance on the boat, as King could not pay the difference. As of the time this case was filed, King still owed Jett approximately $30,000, with interest continuing to accrue.

Based on these actions, the McCracken County Grand Jury indicted King of three felonies: defrauding a secured creditor, entering false information to produce a title document, and theft by deception.

The Inquiry Commission has not issued a formal charge related to this KBA file, as it placed the case in abeyance pending the outcome of the underlying criminal charges.

### C. KBA File 17-DIS-0067

Randall and Holley Reavis hired King to represent them in a car wreck case. The Reavises also granted King a limited power of attorney. King signed an agreement on behalf of Holley, settling her case for $33,000 and releasing all claims. However, in spite of this settlement, King continued to advise the Reavises that their case was still ongoing. Holley finally contacted the insurance carrier, and was advised her claim had been settled and a check had been issued. Holley also learned that Randall's claim had been settled for $60,000 and that his check had also been issued. Both checks were mailed to King's office and both had cleared.

Based upon these facts, King was charged with two counts of theft by failure to make required disposition of property. Just as with the previous file, the Inquiry Commission has yet to issue a formal charge.

4

## D. KBA File 17-DIS-0051

Ron Brisbon hired King in 2011 to represent him in a personal injury claim against Allstate Insurance. Since hiring King, Brisbon has been contacted by medical providers and bill collectors regarding unpaid medical bills. King consistently told Brisbon that his claim had yet to settle—even as recently as December 2016. However, when Brisbon contacted Allstate, Allstate informed Brisbon his claim had settled in 2012 and provided Brisbon a copy of the check. The Inquiry Commission has yet to issue a formal charge in this file.

## E. KBA File 17-DIS-0155

King agreed to represent a close friend, Robert Fell, in a personal injury action in 2013. In 2014, Fell was issued a check for approximately $12,000, but King told him these funds were only for his vehicle—and that his doctor's visits were not covered. When Fell heard of King's arrest for stealing clients' funds, he called the insurance company. Fell discovered that the case had actually been settled for $50,000, and the check had been made payable to both Fell and King's law office. The Inquiry Commission has yet to issue a formal charge.

## F. KBA File 17-DIS-0166

Ira Littrell paid King a $1250 retainer on April 17, 2017, to represent him in a fraud case. King deposited the check in his bank account that day. King was arrested on April 28, 2017, and (as of the date the motions in the current case were filed) has remained incarcerated. Littrell filed this complaint after he

5

realized King would not be able to represent him in the matter or refund his money. The Inquiry Commission has yet to issue a formal charge related to this file.

## II. DISCIPLINE

King acknowledges that the conduct leading to the disciplinary and criminal charges described in the KBA files would be sufficient to permanently disbar him from the practice of law in the Commonwealth of Kentucky. He agrees that the conduct described in these files fails to comply with SCR 3.130-8.4(b), -8.4(c), -1.3, and -1.15(a). He also agrees that there are sufficient facts to justify the issuance of charges in the files on which he has yet to be charged. King asks that this Court terminate all KBA proceedings against him by granting his motion to resign under terms of permanent disbarment pursuant to SCR 3.480(3). King understands that this decision is unconditional, final, and irrevocable and that he will never be reinstated to the practice of law in the Commonwealth of Kentucky.

We agree that King's motion to withdraw his membership is appropriate pursuant to SCR 3.480(3). Therefore, it is hereby ORDERED that:

1. James Grant King is permanently disbarred from the practice of law; and

2. The Kentucky Bar Association's Petition for Temporary Suspension (in case number 2017-SC-000142-KB) pursuant to SCR 3.165 is hereby denied as moot; and

6

3. In accordance with SCR 3.450, King shall pay all costs associated with these proceedings, said sum being $182.45, for which execution may issue from this Court upon finality of this Opinion and Order; and

4. Pursuant to SCR 3.390, King shall, within ten (10) days from the entry of this Opinion and Order, notify all clients, in writing, of his inability to represent them; notify, in writing, all courts in which he has matters pending of his disbarment from the practice of law; and furnish copies of all letters of notice to the Office of Bar Counsel. Furthermore, to the extent possible, King shall immediately cancel and cease any advertising activities in which he is engaged.

All sitting. All concur.

ENTERED: September 28, 2017.

_____
CHIEF JUSTICE

7